NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MORGAN SMITH, | ) | |
| | ) | Supreme Court No. S-17451 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-18-05070 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| SCOTT L. SMITH JR., | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1810 – January 13, 2021 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Morgan Smith, pro se, Anchorage, Appellant. David W. Baranow, Law Offices of David Baranow, Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices.

## I.     INTRODUCTION

A young woman sued her father, alleging that he had violated a court order by improperly retaining portions of the Permanent Fund Dividend (PFD) checks she had received while a minor. The father filed a third-party complaint against his ex-wife, the young woman's mother, alleging that she had misappropriated some of the funds herself and was driving her daughter's lawsuit. The litigation was contentious; the daughter, who was representing herself, was sanctioned twice for filing frivolous motions and for

---

\*     Entered under Alaska Appellate Rule 214.

failing to cooperate in discovery. Ultimately the superior court dismissed her suit with prejudice as a sanction and ordered her to pay enhanced attorney's fees. She appeals.

We reverse one monetary sanction because the record does not show that the daughter, as a self-represented litigant, was adequately informed of her discovery obligations before the sanction was imposed. We otherwise conclude that the court did not abuse its discretion in sanctioning the daughter, dismissing her suit, and awarding enhanced attorney's fees.

## II. FACTS AND PROCEEDINGS

### A. Facts

Morgan Smith is the adult daughter of Scott and Deanna Smith. Scott and Deanna were divorced in 2009 and since then have continued to litigate issues of custody. In a 2009 order the superior court authorized Deanna to "serve as application sponsor for the children's [PFDs]," ordering that seventy percent of each dividend "be saved for the children" with the remaining thirty percent "divided equally between the parents to be used for the direct benefit of the children." An order later in 2009 transferred this authority to Scott.

In 2017 Morgan filed this lawsuit against Scott in small claims court. She alleged that once she turned 18 she asked him to turn over to her the money he had been saving from her PFDs "from 2008-2015"; that he gave her $3,781.20; and that he refused to give her the "remaining [PFD] money." She alleged that Scott still owed her $7,019.75 plus fees, interest, and court costs. In Scott's answer he denied any indebtedness and asserted that Morgan was "acting as an unwitting surrogate or agent for and at the behest of her mother." He filed a third-party claim against Deanna, alleging that she had converted some of the children's PFD money to her own use.

After some preliminary proceedings, the district court judge recognized that Morgan's suit involved "issues that may have been litigated in" the continuing custody

case between her parents and referred the matter to the presiding judge, who ordered that Morgan's case be removed to superior court. There it was assigned to the superior court judge overseeing the custody case so that the two cases could "travel" together. Subsequent proceedings in the two cases sometimes overlapped.

## B.    Proceedings

While still in district court, the parties prepared a report of their planning meeting (later approved by the court), which represented that the case would be ready for trial in September 2018 and that discovery would "be completed at least 20 days prior to trial." Scott's lawyer sent Morgan a notice scheduling her deposition for August 15. Morgan responded by email, asserting that she would not be available until September 3 "[a]t the earliest." Scott's lawyer replied that this was too close to the trial date, but if they stipulated to continue the trial "for a month or two" they would have "time to complete discovery efforts" and prepare transcripts; "[a] deposition on September 3, 2018 could then be accommodated." But Morgan did not respond to this suggestion. Scott's lawyer appeared for Morgan's deposition on August 15, but Morgan did not.

Meanwhile, on August 7, Morgan filed a motion to compel responses to her first requests for production, which had been served on June 15. She followed up ten days later with a motion for an order to show cause, essentially repeating the arguments about outstanding discovery made in her motion to compel and requesting a sanction, as well as attorney's fees and costs, for Scott's failure to comply with the pretrial schedule. Scott served his discovery responses on August 27. The court denied both of Morgan's discovery motions and, in a September 25 order, required that she pay Scott attorney's fees of $200 "as reasonable compensation for the necessity of opposing Defendant's redundant Motion to Show Cause and its predecessor Motion to Compel, per Alaska Civil Rule 11."

Trial was continued to February. Morgan attended her rescheduled deposition on October 9; Deanna was also present. Deanna interrupted the questioning frequently with objections and statements about the merits, until Scott's lawyer proposed that they "get Judge Guidi on the phone and ask him whether or not [Deanna] has been inappropriate in terms of interrupting [Morgan's] testimony." Deanna responded that it was "disturbing" and a sign of "corruption" that Scott's lawyer was considering "personal contact" with the judge over their discovery dispute. Morgan answered several more questions, then asserted that the deposition was making her "extremely uncomfortable" and that she was going to leave. Scott's lawyer warned her that there were "serious consequences" for leaving the deposition before he was finished with his questions; she responded, "I understand the consequences. I am willing to take those."

Scott then filed a motion to dismiss or for an order to show cause why Morgan should not be held in contempt for failing to comply with discovery. In a December 20 order, the court declined to dismiss the case, noting that "dismissal cannot be imposed for discovery violations if there is a lesser form of relief that will adequately protect the aggrieved party, unless the court is able to find that no other form of relief will be effective." The court observed, however, "We are close to, but not quite arrived[] at[,] that point." The court found "that without good cause and despite prior admonition in which the court expressly and specifically cautioned [Morgan] to cooperate with defendant's discovery efforts, and warned of the potential consequences, [Morgan] failed repeatedly to answer reasonable questions at her deposition." It found that "[h]er conduct was knowing and willful" and "had the effect of stymying discovery."

Observing that trial was a few months away, the court noted that "there is still sufficient time for [Morgan] to repair her poor decisions by cooperating and completing her deposition." The court ordered that Morgan reimburse Scott for "the deposition costs (court reporter attendance fee, transcript fee, and video fee)" within 10

days of receiving documentation of those costs; that she reimburse Scott for the attorney's fees and costs "related to the taking of the aborted deposition and the cost of the motion to dismiss"; that she "make herself available and attend the conclusion of her deposition at least two weeks prior to the [February] trial date"; and that she pay Scott's ordered attorney's costs and fees "[a]t least five days prior to the rescheduled deposition." If she failed to comply with these conditions, then, on Scott's renewed motion, "this action shall be dismissed with prejudice."

Scott's lawyer sent a notice rescheduling Morgan's deposition for January 23, 2019. Morgan moved to quash the deposition, arguing, among other things, that Scott already had all the information he was entitled to, that Scott himself should be sanctioned for failing to cooperate in discovery, and that she lacked the resources to make the ordered reimbursements. On January 8 Scott's lawyer informed the court that Morgan had failed to comply with the first reimbursement deadline, i.e., payment of the deposition costs within ten days of receiving the documentation. On January 23 the court denied Morgan's motion to quash the deposition and awarded Scott $500 in "reasonable attorney's fees" for having had to file an opposition. On the same day, Scott's lawyer informed the court that Morgan had failed to appear at the rescheduled deposition and renewed his request that the case be dismissed.

The next day the court issued an order dismissing the case with prejudice. Scott moved for enhanced attorney's fees, claiming approximately $24,000 in fees and costs. The court ordered Morgan to pay $20,000 in attorney's fees "inclusive of discovery expenses previously addressed." The court made specific findings to support the enhancement: (1) Scott's attorney's fees "were reasonably incurred"; (2) the lawyer's hours and hourly rate were reasonable; (3) Morgan had "engaged in unreasonable, vexatious and bad faith litigation conduct"; (4) "insofar as evidence has been presented to the court concerning the merits of the claims, they appear to be

spurious and without factual support"; and (5) "the case has been made[] unnecessarily complex by [Morgan's] antics."

Morgan appeals. She argues that the superior court abused its discretion by dismissing the case with prejudice, abused its discretion in the awards of sanctions and attorney's fees, and treated her unfairly throughout the proceedings.

## III.   STANDARD OF REVIEW

We review for abuse of discretion a superior court's orders to impose discovery sanctions,[1] to award attorney's fees,[2] and to dismiss a case with prejudice for failure to follow court orders.[3] "A decision constitutes abuse of discretion if it is 'arbitrary, capricious, [or] manifestly unreasonable, or . . . stems from an improper motive.' "[4] "Where a trial court enters findings of fact in determining whether discovery sanctions are appropriate, we will not set aside such findings unless they are clearly erroneous."[5] "We review de novo the question of whether a judge appears biased, which is assessed under an objective standard."[6]

---

[1]     *DeNardo v. ABC Inc. RVs Motorhomes*, 51 P.3d 919, 922 (Alaska 2002).

[2]     *Kollander v. Kollander*, 400 P.3d 91, 95 (Alaska 2017).

[3]     *Azimi v. Johns*, 254 P.3d 1054, 1059 (Alaska 2011).

[4]     *Gunn v. Gunn*, 367 P.3d 1146, 1150 (Alaska 2016) (quoting *Roderer v. Dash*, 233 P.3d 1101, 1107 (Alaska 2010)).

[5]     *Spenard Action Comm. v. Lot 3, Block 1, Evergreen Subdivision*, 902 P.2d 768, 776 (Alaska 1995).

[6]     *Downs v. Downs*, 440 P.3d 294, 297 (Alaska 2019) (quoting *Mengisteab v. Oates*, 425 P.3d 80, 85 (Alaska 2018)).

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion By Dismissing Morgan's Case With Prejudice For Her Failure To Comply With Court Orders.

Morgan argues that it was a "miscarriage of justice" for the court to dismiss her case with prejudice as a sanction for her failure to appear at her rescheduled deposition in January (following her nonappearance for it in August and her early departure from it in October). Alaska Civil Rule 41(b) authorizes the use of dismissal as a sanction if the plaintiff fails to comply with "any order of court."[7] There is a high bar for dismissal under Rule 41(b): "There must be 'willful noncompliance' with court orders, or 'extreme circumstances,' or 'gross violations' of the Rules."[8] Willfullness is a "conscious intent to impede discovery, and not mere delay, inability, or good faith resistance."[9] "The record must also 'clearly indicate a reasonable exploration of possible and meaningful alternatives to dismissal.' "[10] "If meaningful, alternative sanctions are available, the trial court must ordinarily impose these lesser sanctions rather than dismissal with prejudice."[11] And " 'pro se litigants should be held to less stringent

---

[7]     Alaska R. Civ. P. 41(b).

[8]     *Azimi*, 254 P.3d at 1066 (quoting *Arbelovsky v. Ebasco Servs., Inc.*, 922 P.2d 225, 227 (Alaska 1996)).

[9]     *Khalsa v. Chose*, 261 P.3d 367, 373 (Alaska 2011) (quoting *Hawes Firearms Co. v. Edwards*, 634 P.2d 377, 378 (Alaska 1981)).

[10]     *Azimi*, 254 P.3d at 1066 (quoting *Arbelovsky*, 922 P.2d at 227).

[11]     *Arbelovsky*, 922 P.2d at 227 (citing *Power Constructors, Inc. v. Acres Am.*, 811 P.3d 1052, 1055 (Alaska 1991)).

standards than those of lawyers.' "[12]

Before dismissing Morgan's case in January, the court, in its December 20 order on Scott's motion to dismiss, made express findings that Morgan had "failed repeatedly to answer reasonable questions at her deposition" "without good cause and despite prior admonition in which this court expressly and specifically cautioned [her] to cooperate with [Scott's] discovery efforts." The court expressly found that Morgan's conduct "was knowing and willful" and "had the effect of stymying discovery." These findings have support in the record and are not clearly erroneous.[13]

The court acknowledged that dismissal was, at that stage, too severe a sanction for Morgan's misconduct, though it warned her that she was close to the edge. It appropriately explored possible and meaningful alternatives. It clearly explained to Morgan how she could avoid the extreme sanction of dismissal: she must "undo the financial harm her actions have caused to [Scott]" by reimbursing the costs and fees related to the aborted deposition and make herself available for another. The court set out the timeline for these steps and specifically warned that the consequence of noncompliance would be dismissal. We see nothing in the order that would have been confusing to a pro se litigant attempting in good faith to comply.

Morgan nonetheless failed to meet the order's clear conditions; she failed to make the required reimbursements and failed to appear for her rescheduled deposition. Instead she filed a motion to quash, a motion the court found meritless (awarding Scott $500 in attorney's fees for having to respond to it). As it had warned it would do, the court then dismissed the case because of Morgan's "documented and repeated failure to

---

[12] *Bauer v. State, Dep't of Corr.*, 193 P.3d 1180, 1184 (Alaska 2008) (quoting *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987)).

[13] *See Spenard Action Comm. v. Lot 3, Block 1, Evergreen Subdivision*, 902 P.2d 768, 776 (Alaska 1995).

provide discovery." Although the dismissal order did not make a specific finding that Morgan's failures were willful, the court had made the necessary findings in its December order, which the dismissal order referenced.[14]  Because the court made the required finding of willfulness, followed a graduated approach to sanctions, and clearly explained to Morgan her path forward, we conclude that it did not abuse its discretion when it imposed the litigation-ending sanction of dismissal.

B.      **The Superior Court Did Not Abuse Its Discretion By Awarding Enhanced Attorney's Fees.**

Morgan also challenges the superior court's attorney's fees award of $20,000, an amount which includes the fees awarded as discovery sanctions.  Morgan argues that the award is excessive and that Scott's lawyer's invoice included work on Scott's third-party complaint against Deanna, which Morgan says she should not be required to cover.

The superior court has discretion under Alaska Civil Rule 82 to award reasonable attorney's fees and to vary the award from the scheduled amounts if, based on its consideration of specific factors, it believes a variation is warranted.[15]  "[T]he trial court is in the best position to determine reasonableness as 'it has knowledge of the case that the reviewing court lacks' and '[t]he trial court's greater knowledge of the case makes it uniquely suited to [determine reasonable actual attorney's fees] quickly,

---

[14]      The superior court referred to "specific court admonition and directives" made during "an extended status hearing on September 28, 2018."  That status hearing was scheduled in the companion custody case, but the record of the hearing confirms that Morgan attended and participated.  "Court records . . . may be judicially noticed to show 'that a prior suit was filed, who the parties were, and so forth.' "  *Amy S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 440 P.3d 273, 281 (Alaska 2019) (quoting *F.T. v. State*, 862 P.2d 857, 864 (Alaska 1993)).

[15]      Alaska R. Civ. P. 82(b)(3).

accurately, and fairly.' "[16]

The superior court in this case made specific factual findings to support its award of enhanced fees: that Scott's lawyer's fees were reasonable, that Morgan had "engaged in unreasonable, vexatious and bad faith litigation conduct," and that her underlying claims, to the extent they had been developed before trial, appeared to be "spurious and without factual support." Again, the court's findings have support in the record and are not clearly erroneous.[17]

We also reject Morgan's contention that the attorney's fee award includes work on Scott's third-party complaint against Deanna that Morgan should not have to pay for. The line between Morgan's claim and the third-party complaint was not sharply defined; both claims were to be tried together. Courts are generally not required to apportion fees by claim,[18] with the caveat that one of several losing co-parties should not be made to bear "an unreasonably heavier burden" than the others.[19] Morgan's cursory argument on this issue does not persuade us that the superior court abused its discretion in its award of enhanced attorney's fees.

**C.** **It Was An Abuse Of Discretion To Sanction Morgan The First Time Without Warning, But The Later Sanction Was Not An Abuse Of Discretion.**

The court ordered monetary sanctions against Morgan twice: once in

---

[16]     *Moore v. Olson*, 351 P.3d 1066, 1078 (Alaska 2015) (alterations in original) (quoting *Okagawa v. Yaple*, 234 P.3d 1278, 1282 (Alaska 2010)).

[17]     *See In re Schmidt*, 114 P.3d 816, 820 (Alaska 2005) (holding that factual findings in support of attorney's fees awards "are reviewed for clear error").

[18]     *See Tenala, Ltd. v. Fowler*, 993 P.2d 447, 450 (Alaska 1999).

[19]     *Nautilus Marine Enters., Inc. v. Exxon Mobil Corp.*, 332 P.3d 554, 563-64 (Alaska 2014).

September 2018 pursuant to Civil Rule 11[20] in the amount of $200 and again in January 2019 in the amount of $500. Morgan argues that these sanctions were unwarranted and unfair.[21]

The $200 sanction was prompted by Morgan's actions in filing a motion to show cause ten days after she had made a motion to compel that made essentially the same arguments; the sanction was intended to compensate Scott "for the necessity of opposing" both of these redundant motions. We note that Morgan's motions were filed before the case was removed to superior court, and there is no indication that either the district court or the superior court, after removal, advised her of the proper way to enforce Scott's discovery obligations. We have held that a court should give a pro se litigant notice and direction before imposing sanctions.[22] Because Morgan was self-represented and ostensibly inexperienced, we conclude that the $200 sanction, imposed before she had been given any specific notice or direction about the conduct of

---

[20] Rule 11 sanctions are "intended to minimize waste of party and judicial resources by deterring claims that 'a modicum of investigation' would have revealed to be untenable." *Kollander v. Kollander*, 400 P.3d 91, 96 (Alaska 2017) (quoting *Foster v. Michelin Tire Corp.*, 108 F.R.D. 412, 415 (C.D. Ill. 1985)). "To comport with Rule 11, 'an attorney [or party] is obliged to make objectively reasonable efforts to ascertain the facts of the case before making assertions of fact in court documents.'" *Id.* (quoting *Copeland v. State*, 70 P.3d 1118, 1122 (Alaska App. 2003)).

[21] Much of Morgan's argument is that Scott was more deserving of sanctions than she was because of his alleged failure to comply with the 2009 order regarding the disposition of the children's PFDs. But this argument is irrelevant to the questions on appeal about the conduct of discovery.

[22] *Azimi v. Johns*, 254 P.3d 1054, 1067 (Alaska 2011) (citing *Collins v. Arctic Builders*, 957 P.2d 980, 982 (Alaska 1998)).

discovery, was an abuse of discretion.[23] We therefore vacate the $200 sanction.[24]

The court's second monetary sanction was the $500 awarded for Scott's reasonable attorney's fees incurred "in connection with his defense of and opposition to" Morgan's motion to quash her deposition rescheduled to January 2019. Alaska Civil Rule 37 "affords trial courts broad power to enforce discovery orders by the use of sanctions."[25] In *Boiko v. Kapolchok* we upheld Rule 37 discovery sanctions against self-represented litigants who had shown a "pattern of noncompliance, and the court levied sanctions only after numerous motions to compel and repeated warnings regarding other discovery violations."[26] As in *Boiko*, the superior court in this case gave Morgan written explanations of the discovery and deposition processes and warned her of the serious consequences if she did not comply with its orders. Rather than complying, Morgan filed a motion to quash that largely reiterated arguments she had made before and required a substantive response from Scott. We cannot say that the $500 sanction was an abuse of the superior court's discretion.[27]

---

[23] We recognize that the superior court's quick response to the redundant filings may have been influenced by its knowledge of the parties drawn from its long experience overseeing Scott and Deanna's contentious custody litigation. But whether that was a factor in the sanction against Morgan is not evident from our record.

[24] The final judgment specifically "subsumes" the $200 sanction, but because we have reversed that sanction it should be subtracted from the final judgment amount.

[25] *Khalsa v. Chose*, 261 P.3d 367, 372 (Alaska 2011) (quoting *DeNardo v. ABC Inc. RVs Motorhomes*, 51 P.3d 919, 922 (Alaska 2002)).

[26] 426 P.3d 868, 881 (Alaska 2018).

[27] We note our understanding that this sanction is subsumed in the $20,000 attorney's fees award, which was made "inclusive of discovery expenses previously addressed."

**D.      The Superior Court Proceedings Were Not Unfair.**

Morgan argues that she was treated unfairly by the courts throughout the litigation and that the judges obviously favored Scott and his attorney. We review claims of bias and partiality de novo.[28] Bias cannot be inferred from adverse rulings, and a party claiming bias must prove "that the court formed an unfavorable opinion of the party from extrajudicial information"[29] or that "a judicial officer hear[d], learn[ed], or d[id] something intrajudicially so prejudicial that [the judge's] further participation would be unfair."[30] None of Morgan's specific claims satisfy these tests.

First, Morgan challenges the process by which her case was removed to superior court. She points to the district court order on which the judge hand-wrote, "If plaintiff wants to consolidate this case [with a] superior court c[ase] he must make the request in superior court." Morgan interprets this to mean that only she, as plaintiff, could remove the case, and the removal initiated by Scott was therefore improper. But the order identified Scott as "Third-Party Plaintiff" and attached the pronoun "he" to "plaintiff"; the court was clearly referring to Scott. In any event, nothing about the order prevented *either* party from requesting consolidation.

Morgan also argues that the court favored Scott and helped him litigate the case, even though she was self-represented while he had a lawyer. She contends that the court "wrote on orders . . . what Scott should file next." In the orders Morgan cites, the court, after dismissing her claim, encouraged Scott to dismiss the third-party complaint

---

[28]      *See Downs v. Downs*, 440 P.3d 294, 297 (Alaska 2019) ("We review de novo the question of whether a judge appears biased, which is assessed under an objective standard." (quoting *Mengisteab v. Oates*, 425 P.3d 80, 85 (Alaska 2018))).

[29]      *Id.* at 299-300.

[30]      *Id.* at 300 (quoting *Brown v. State*, 414 P.3d 660, 661 n.3 (Alaska 2018) (Winfree, J., concurring in part and dissenting in part)).

as well "with each party to that claim bearing its own costs and fees," and it asked that Scott submit a separate final judgment. These directions showed no favoritism and were simply ordinary efforts to keep the case moving forward. Morgan also argues that she must have been held to a higher standard because Scott was never sanctioned while she was, and all of her motions were denied. But "[a]s we have previously reminded pro se litigants, 'judicial bias should not be inferred merely from adverse rulings.' "[31]

Morgan next contends that Scott's lawyer had personal and improper access to the superior court; she gives two examples. First, she notes that Scott's counsel called the presiding judge's chambers after the case was removed to superior court. But Scott identified this as a "courtesy call" to ensure that Morgan's case was assigned to the judge already assigned to the custody case, as intended by the removal order. The rules of judicial conduct allow ex parte communications for administrative or scheduling reasons,[32] and Morgan has not shown that this phone call was anything but administrative.

As her second example of improper access, Morgan points to Scott's lawyer's suggestion at the October 2018 deposition that the parties "get Judge Guidi on the phone." The suggestion was clearly made in an attempt to enlist an impartial arbiter to deal with Deanna's objections so that the deposition could proceed; it did not propose an ex parte communication, and there was nothing improper about it.

Finally, Morgan argues that the superior court acted improperly because it repeatedly ruled against her despite having found that Scott misappropriated her PFDs. Morgan relies for this finding on the log notes of a December 17, 2018 court hearing.

---

[31] *Kinnan v. Sitka Counseling*, 349 P.3d 153, 160 (Alaska 2015).

[32] Alaska Code Jud. Conduct Canon 3(7)(b) ("[A] judge may engage in ex parte communications for scheduling or other administrative purposes.").

The audio from the hearing, however, reveals that what the court actually said was that Scott "had not" misappropriated Morgan's PFDs. The log notes are not meant to be a verbatim record, and in this instance they are simply incorrect.[33]

In short, nothing in the record "objectively permit[s] a conclusion that the court was biased, or appeared to be biased."[34] We therefore reject Morgan's claim that the judge treated her unfairly.

## V.    CONCLUSION

We VACATE the September 25, 2018 order imposing a $200 sanction. We otherwise AFFIRM the judgment of the superior court.

---

[33]    "Citations to hearing recordings or transcripts are preferred over citations to log notes." *Haley B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, No. S-16562, 2017 WL 4767710, *4 n.12 (Alaska Oct. 19, 2017); *see also Andrea C. v. Marcus K.*, No. S-17006, 2018 WL 6252860, *4 (Alaska Nov. 28, 2018) (noting that "log notes were inaccurately transcribed, and the twice-omitted word 'not' reverses each statement's meaning"); *Roach v. State*, No. A-12350, 2019 WL 856581, *2 n.9 (Alaska App. Feb. 20, 2019) ("We remind attorneys that an appellant may not rely solely on hearing log notes to establish points that are essential to deciding the issues on appeal, and that such a deficiency may be fatal to an appellant's claim.").

[34]    *Kinnan*, 349 P.3d at 160-61 (quoting *Greenway v. Heathcott*, 294 P.3d 1056, 1064 (Alaska 2013)).